29549. WEST *v.* THE STATE.

DECIDED SEPTEMBER 29, 1942.

*W. L. Nix,* for plaintiff in error.

*Hope D. Stark, solicitor-general,* contra.

MACINTYRE, J. Special ground 1 complains of the court's refusal to grant the defendant's motion for a continuance based on the absence of Mrs. J. T. Henry, whom the defendant testified he desired as a witness and whom he expected would testify that sheriff W. H. Hutchins, in a conversation with the wife of the defendant immediately after the raid of the still at which defendant was charged with attempting to make whisky, asked defendant's wife where he was and if he didn't run off from the still down there. It was shown that Hutchins was expected to testify, as he did later testify, that he recognized the defendant was at the still and that he ran off from the still, and that the testimony of Mrs. Henry would be impeaching testimony. The showing was to the effect that Mrs. Henry had not been served with a subpoena, but that a subpoena had been issued for her and not served

because she was with a very sick child in a hospital in Atlanta. The motion for new trial has the allegation that "defendant had made every effort to serve said subpœna but he had not done so on account of being unable to locate said witness until he had come into court and learned this from some member of the family." This is a conclusion and not a statement of fact. It is not stated when the subpœna was issued or what effort defendant had made to locate the witness. It later developed in the trial that Mrs. Henry was connected with the defendant's family, defendant's daughter testifying that Mrs. Henry was her aunt. The record before the court at the time showed that defendant had made an appearance bond in this case on June 4, 1941, under a justice's court warrant charging him on May 6, 1941, with attempting to manufacture liquor. He later made another appearance bond in the same case in which this indictment was returned on July 24, 1941. In our opinion the diligence required was not shown. There was no showing that the defendant had complied with or had attempted to comply with Code §§ 27-414, 27-415. Moreover, there was other evidence sufficient to authorize the jury's verdict, to wit, the testimony of State's witness deputy sheriff R. L. Bradberry and also that of Mercer Henry, in our view of the evidence. In *Freeman* v. *Atlanta,* 12 *Ga. App.* 564 (77 S. E. 891), it was held: "A refusal to grant a continuance, in order to procure the presence of an absent witness for the purpose of impeaching an adverse witness, will not, generally, be held to have been an abuse of discretion, when the judgment complained of was fully authorized by evidence other than the testimony of the witness whom it was sought to impeach." Also, in *Smith* v. *State,* 13 *Ga. App.* 32 (78 S. E. 685), it was held: "There was no abuse of discretion in refusing to grant a continuance on the ground of the absence of a witness whose evidence was wanted by the accused to attack the credibility of one of the State's witnesses, especially since the verdict did not depend alone upon the testimony of the witness whom the accused sought to impeach." We conclude, therefore, that no reversible error is shown in this ground.

Special ground 2: In laying the foundation for an attempt to impeach the sheriff the defendant's counsel asked him: "Now in that conversation [with the defendant's wife] did you *state*

that Floyd [defendant] run away from the still down there or did you *ask* if he ran away from it?" (Italics ours.) The witness replied: "I asked her if Floyd had ever got up to the house yet. I said he run away from a still down there and she said he wasn't up there [at the house]." Counsel for the State objected to this testimony and the court stated that "the defendant could prove the conversation for the purpose of impeachment by laying the foundation, but that he couldn't go into a conversation out of the presence of the defendant." Mary Alma West testified: "Mr. Hutchins [sheriff] came up to our house and asked where my father was, and mother told him that he had gone to Atlanta to get a piece for his automobile, a knee-action part, and asked if that was him that run away from the still and she said it wasn't." The court excluded the testimony on his own motion. The part of the answer of the witness that the defendant went "to Atlanta to get a piece for his automobile, a knee-action piece," was inadmissible. This part of the impeaching witness's answer was unnecessary to determine the simple issue whether the sheriff *stated* "that Floyd [defendant] run away from the still down there," or if he [sheriff] merely *asked* "if he ran away from it." Moreover, the evidence disclosed that the wife of the defendant did not go to Atlanta with him, and her knowledge of this part of her answer was confined to what her husband or some one else had told her. If we concede that the part of the answer of the impeaching witness that "he [sheriff] asked if that was him [defendant] that run away from the still and she said it wasn't" was relevant as impeaching testimony, nevertheless, "the evidence was offered as a whole; and the rule is well settled that where evidence, some of which is admissible, and some of which is not admissible, is offered as a whole, a new trial will not be granted because of its rejection." *Arnold* v. *State,* 131 *Ga.* 494, 496 (62 S. E. 806). It was the opinion of the judge, as stated in his written judgment, that the rule in the *Arnold* case was applicable. We can not say that reversible error is shown by this ground.

Special ground 3: The defendant moved the court to declare a mistrial, contending "that the actions of the solicitor-general in repeatedly questioning the witness relating to these matters were highly prejudicial to the defendant; that it involved matters about which defendant's wife was not a competent witness, and

about which she would not be allowed to testify; that the solicitor-general had unnecessarily prejudiced the rights of defendant in continuing to question the witness about them after the court had excluded it from their consideration." The first answer to the first question of the solicitor-general recited in ground 3 was not responsive to the question. The evidence disclosed that Mr. Henry was the brother of the defendant's wife, and was at the still at the time the officers approached, and that both he and the defendant fled. The solicitor-general asked the sheriff what he did with certain "tubs and barrels and stuff that was down there [at the still]?" The witness answered: "She [the wife of the defendant] told me she wanted that tub down there; it was the only one she had and I told her she could have the tub. . ." On objection this evidence was excluded. The next question asked by the solicitor-general was: "What did you do with the tubs?" To this the witness replied: "I give them to Mr. Henry [Mercer Henry] and told him to take them up there [to the home of the defendant]." The court immediately cautioned the witness not to go into any conversation. The next question asked by the solicitor-general was: "Do you know what Mr. Henry did with the tubs?" The answer was: "I don't know what he done with them; he left there with them on his shoulder." Mr. Henry later testified that he carried the tubs up to the defendant's house. Thus it seems to us the solicitor-general was attempting to prove that the defendant's wife's brother took the tubs from the still up to the defendant's home, but in his endeavor to do so the witness, in an unresponsive answer, made a statement that was not admissible. However, this statement of the witness did not show any wilful desire to prejudice the defendant's case. He was not a lawyer and evidently did not know the legal rules with reference to a wife testifying against her husband; or if he knew the rules, we do not think there was anything to show that he intended to violate the rules of evidence, and what the wife said was by the court ruled out, and the solicitor-general, by questions, finally proved by the witnesses that the tubs were taken to the home of the defendant. We think the final testimony as to the tubs, by the defendant's brother-in-law, that after the raid he took the tubs from the still to the home of the de-

fendant and there left them, was a circumstance which could be properly proved.

Special ground 4: This complains of the court's refusal to grant a further motion for mistrial because the State's witness, deputy sheriff R. L. Bradberry, testified that "the first time I ever saw Mr. West [defendant], we had a warrant for him," and in answer to the question how long this was before the making of the raid resulting in the present case the witness said, "A month or two." Counsel for movant contended that this put the defendant's character in evidence. The testimony referred to was ruled out. We do not think the facts stated in this ground showed reversible error.

Special ground 5: Immediately following the ruling on the testimony of the witness Bradberry for the State, referred to in the next ground immediately preceding this one, the State introduced a witness, Mercer Henry, who testified as follows: Question by the solicitor-general: "What did you do, if anything, with the barrels or tubs?" A. "I brought them on back to West's house." Q. "Do you know whose tubs they were?" A. "Well, yes, sir, they were my sister's tubs." Q. "Is your sister or not the wife of Floyd West?" Q. "Did you carry the tubs to Floyd West's house?" A. "Yes." The defendant moved for a mistrial on the ground that these questions and answers were prejudicial; were made for the purpose of bringing the defendant's wife into the case, where as a matter of law, she could neither affirm nor deny what the witness was testifying. She could not testify in the case at all. "The court ruled out the testimony as being not evidence against the defendant," and overruled the motion for a mistrial. This ground does not disclose reversible error.

Special ground 6: The defendant excepted to the following excerpt from the charge: "Our law provides that if any person shall attempt to commit a crime, and in such attempt shall do any act towards the commission of such crime, but shall fail in the perpetration thereof, or shall be prevented or intercepted from executing the same, he shall, like the case on trial, be guilty of a misdemeanor," on the ground that this part of the "charge amounted to an expression of opinion by the court that the defendant had done some of the things enumerated," and that "the gravity of the charge is the expression 'like the case on trial.'

This expression tended to emphasize, and did put undue emphasis on the words just preceding this statement." Some attempts to commit a crime are felonies and some are misdemeanors. The words "like the case on trial" in the context in which they were used by the judge were stating or declaring that the particular "attempt" charged in the case on trial was a misdemeanor in contradistinction from a felony, and we think the jury so understood. "To declare the law applicable to a given state of facts is no expression or intimation of an opinion as to whether any of the facts referred to do or do not exist." *Olliff* v. *Howard,* 33 *Ga. App.* 778, 782 (127 S. E. 821). In the excerpt complained of the judge was stating hypothetically that if any one (not necessarily the defendant, but any one) did the enumerated acts and it was so shown by the evidence the jury would be authorized to find the defendant guilty of a misdemeanor. *Croker* v. *State,* 57 *Ga. App.* 895, 898 (197 S. E. 92). This ground does not disclose reversible error.

Special ground 7: In *Yonce* v. *State,* supra, the Supreme Court, in answer to a certified question from this court, laid down a rule which was later on embodied in a charge by the trial court and approved by this court in *Smith* v. *State,* supra, which charge was as follows: "I charge you that the law provides that when one is present at a place where intoxicating, spirituous, or vinous liquors, wines, or beers are being made, manufactured or distilled in violation of the law, and upon the approach of officers such person flees, it is a circumstance which would authorize the jury to convict the accused, unless his presence there, or his flight, one or both, be satisfactorily explained by the defendant to the jury. It is not a conclusive circumstance, but one that would authorize the jury if unexplained to treat the defendant as guilty and convict." These cases had reference to making intoxicating liquors, and the judge in the instant case was by analogy seeking in his charge to apply the reasoning of this rule, stated in the *Yonce* and *Smith* cases, to "an attempt" to commit the crime of distilling intoxicating liquors. We think the excerpt from the charge objected to in this ground, when considered with reference to the whole charge, is by analogy supported by *Yonce* v. *State,* and *Smith* v. *State,* supra.

The rule as announced in *Yonce* v. *State,* supra, which was a case of manufacturing whisky, is by analogy controlling in this

case, which is a charge of attempting to manufacture whisky. Applying this rule to the evidence, the jury were authorized to find the defendant guilty as charged. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*